UNITED STATES of America, Appellee,

v.

**Hakeem FAHM, Defendant, Appellant.**

UNITED STATES of America, Appellee,

v.

**Hakeem FAHM, Defendant, Appellant.**

Nos. 92–2215, 93–1012.

United States Court of Appeals,
First Circuit.

Heard Nov. 1, 1993.

Decided Jan. 5, 1994.

Randy Olen, with whom David N. Cicilline, Providence, RI, was on brief, for defendant-appellant.

Edwin J. Gale, U.S. Atty., Providence, RI, for appellee.

Before SELYA, Circuit Judge, BOWNES, Senior Circuit Judge, and CYR, Circuit Judge.

CYR, Circuit Judge.

After failing to appear for sentencing on credit-fraud charges in January 1991 before the United States District Court for the District of Rhode Island, appellant Hakeem Fahm was sentenced to a twenty-month prison term in September 1992. Three months later, the district court reconsidered the original sentence *sua sponte* and imposed a twenty-one month prison term. We deny Fahm's appeal from the original sentence and conclude that the district court was without jurisdiction to "correct" it under Fed.R.Crim.P. 35(c).

# I

## BACKGROUND

Fahm pled guilty in Rhode Island federal district court on November 29, 1990, to credit card fraud and conspiracy. *See* 18 U.S.C. § 1029(a)(2) (fraudulent use of unauthorized access devices) and (b)(2) (conspiracy to violate § 1029(a)(2)). Fahm was twenty-one years of age at the time. Less than one month later, while released pending sentencing, he was arrested for obstructing a Rhode Island police officer in connection with a motor vehicle violation, whereupon he fled, failed to report to his pretrial services officer, and violated bail by absenting himself from the federal sentencing hearing scheduled for January 1991. Shortly thereafter Fahm committed the crime of attempted credit card fraud, for which he was convicted and sentenced in the United States District Court for the District of Delaware. After serving a five-month sentence on the latter charge, Fahm was returned to the District of Rhode Island for sentencing on the offenses of conviction.

# II

## DISCUSSION

**A.** *The Appeal from the Original Sentence.*

**1.** *Reduction for Acceptance of Responsibility § 3E1.1(a) (Nov.1990).*

■ Notwithstanding his abscondence and subsequent federal conviction while awaiting

sentencing on the offenses of conviction, Fahm frivolously asserts that the district court committed clear error, *see United States v. Royer,* 895 F.2d 28, 29 (1st Cir. 1990), by denying him a two-level reduction for "acceptance of responsibility" pursuant to U.S.S.G. § 3E1.1(a) (Nov.1990). We find it quite unremarkable that Fahm's belated protestations of remorse fell on deaf ears in the district court ("I frankly don't believe ... that [the defendant is] sorry....). *See United States v. O'Neil,* 936 F.2d 599, 600 (1st Cir.1991) (district court may look to later conduct to determine sincerity of defendant's claimed acceptance of responsibility).

**2.** *Upward Departure for Underrepresented Criminal History § 4A1.3 (Nov.1991).*

■ Next, Fahm challenges the upward departure imposed pursuant to U.S.S.G. § 4A1.3,[1] which provides in relevant part:

> If reliable information indicates that the criminal history category does not adequately reflect the *seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes,* the court may consider imposing a sentence departing from the otherwise applicable guideline range....

(Emphasis added.) Ignoring the overburden, Fahm argues that no unusual circumstances distinguish his case from the "minerun for th[e] offense[s]" of conviction. *United States v. Aguilar–Pena,* 887 F.2d 347, 350 (1st Cir.1989).

**a.** *The Decision to Depart.*

■ The original presentence report (PSR) recommended a six-to-twelve month guideline sentencing range (GSR), based on an adjusted base offense level (ABOL) of ten and a level I criminal history category (CHC). The PSR addendum prepared prior to the sentencing hearing held on September 30, 1992 ("first hearing"), proposed a level II

---

1. The revised presentence report recommended criminal history category II, based on Fahm's similar Rhode Island state conviction for fraudu-

lent use of credit cards and his "prior sentence" on the federal credit-fraud offense in Delaware. *See* U.S.S.G. §§ 4A1.1(b), 4A1.2(a)(1), (4), cmt. 1.

CHC based on Fahm's intervening Delaware sentence. *See* U.S.S.G. § 4A1.2 cmt. 1. At the first hearing, the district court advised Fahm that it intended to depart to CHC IV, because (i) Fahm committed the Delaware offense while on bail, *see id.* at § 4A1.3; *United States v. Calderon,* 935 F.2d 9, 12 (1st Cir.1991) (commission of offense while on release represents breach of commitment to court), (ii) CHC II underrepresented his actual criminal conduct, and (iii) the CHC would be higher were any of several pending state and federal charges later to result in conviction, *see* U.S.S.G. § 4A1.3(e); *United States v. Figaro,* 935 F.2d 4, 7 (1st Cir.1991).[2]

■ The decision to depart is subject to bifurcated review. First, all "quintessentially legal" rulings underlying the decision to depart, such as whether the guideline language permits or forbids departure for the *kinds of reasons* relied on by the sentencing court, are subject to plenary review. *United States v. Rivera,* 994 F.2d 942, 951 (1st Cir. 1993). Second, in reviewing its "judgment call" as to whether the *particular circumstances* warrant departure, *id.* at 951–52, "appropriate respect" is due the sentencing court's "superior 'feel' for the ... case." *United States v. Ramirez,* 11 F.3d 10, 13 (1st Cir.1993).

### (i) *Legal Rationale for Departure.*

The guidelines explicitly countenance upward departures pursuant to U.S.S.G. § 4A1.3, based on the rationale adopted by the district court in this case: "[T]he criminal history score is unlikely to take into account all the variations in the seriousness of criminal history that may occur.... *particularly* ... in the case of younger defendants (*e.g.,* defendants in their early twenties or younger) who are more likely to have received repeated lenient treatment, yet who may actually pose a greater risk of serious recidivism than older defendants." U.S.S.G. § 4A1.3, backg'd. (emphasis added). Given Fahm's youth, the similarity and contemporaneity of his criminal conduct, and the fact that he had but one countable "prior sentence," *see* U.S.S.G. § 4A1.2 cmt. 1, the district court correctly determined that departure was permissible pursuant to § 4A1.3(d), (e), provided reliable information demonstrated that CHC II significantly underrepresented the seriousness of Fahm's actual criminal history and the risk of recidivism. *Id.*

### (ii) *Factual Grounds for Departure.*

Were we called upon to do so, we would review the sentencing court's findings of fact for clear error, *Rivera,* 994 F.2d at 950, but Fahm challenges neither the reliability of the criminal history evidence nor the factual findings on which the departure decision was based.[3]

■ Nor can we fault the district court's "judgment call," *see United States v. Diaz–*

---

**2.** Fahm does not argue that the original sentence contravened U.S.S.G. § 4A1.3, which instructs the sentencing court to consider the adequacy of the next higher (or lower) CHC, rather than leapfrogging. *See United States v. Aymelek,* 926 F.2d 64, 70 (1st Cir.1991) (noting that sentencing court is "specifically instructed to use 'as a reference, the guideline range for a defendant with a higher or lower criminal history category, as applicable'" (quoting U.S.S.G. § 4A1.3, p.s.)); *United States v. Polanco–Reynoso,* 924 F.2d 23, 25 (1st Cir.1991) (approving § 4A1.3 departure to next CHC). Since Fahm's one oblique allusion to the leapfrogging methodology appears in a parenthetical to a case citation, unaccompanied by argumentation, we adhere to our settled rule that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Zannino,* 895 F.2d 1, 17 (1st Cir.), *cert. denied,* 494 U.S. 1082, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990) (citations omitted). *See also*

*United States v. Emery,* 991 F.2d 907, 913 n. 9 (1st Cir.1993) (§ 4A1.3 departure above CHC VI).

**3.** The district court grounded its decision to depart on information contained in the PSR and its addenda, derived primarily from public records, that Fahm recently engaged in similar adult criminal conduct that had not resulted in conviction, *see* § 4A1.3; *Ramirez,* 11 F.3d at 14, and that he had committed offenses while released pending the disposition of other charges. As for the evidence that Fahm absconded before sentencing on the instant charges, the public record is irrefutable. *See United States v. Garcia,* 978 F.2d 746, 749 (1st Cir.1992) (upholding § 4A1.3 departure where there was no dispute that defendant committed offenses after absconding on another charge). There was no clear error in the factual findings underlying the decision to depart.

*Villafane,* 874 F.2d 43, 49–50 (1st Cir.), *cert. denied,* 493 U.S. 862, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989), that Fahm's criminal history warranted an upward departure pursuant to U.S.S.G. § 4A1.3(d), (e), a ruling we review with the considerable deference due the sentencing court's "special competence" and superior "feel" in the circumstances of the particular case, *Ramirez,* 11 F.3d at 13; *Rivera,* 994 F.2d at 951–52. In far less egregious circumstances we have sustained an upward departure where the offenses of conviction were committed while the defendant was awaiting final disposition of similar state charge. *See Calderon,* 935 F.2d at 12. Fahm committed these offenses while awaiting disposition of similar Massachusetts charges (larceny of an automobile and obtaining property under false pretenses) which had yet to result in conviction. *See* U.S.S.G. § 4A1.3(e). Furthermore, while awaiting sentencing on the instant offenses, he committed a similar credit-fraud felony in Delaware. *See United States v. Moore,* 931 F.2d 3, 4 (1st Cir.1991) (offenses involving "the same sort of dishonesty and misappropriation of other people's property" are "similar"). Thus, the district court reasonably concluded that CHC II under-represented Fahm's actual criminal history, a finding well supported, *inter alia,* by the similar credit-fraud related charges committed within two years of the instant offenses, evidencing a serious pattern of recidivism not reflected in the conventional CHC calculation under U.S.S.G. §§ 4A1.1 and 4A1.2. *See Figaro,* 935 F.2d at 7 ("the recency of a prior offense may be considered an indicator of increased likelihood of recidivism, exacerbating the seriousness of a de-

fendant's criminal history."); *United States v. Aymelek,* 926 F.2d 64, 70 (1st Cir.1991).

### b. *The Degree of Departure.*

■ The reasonableness of the degree of departure is reviewed with "appropriate respect" for the sentencing court's "special competence," *Rivera,* 994 F.2d at 952, and substantial deference to its weighting of departure factors properly considered under the guidelines. *See Williams v. United States,* — U.S. —, —, 112 S.Ct. 1112, 1121, 117 L.Ed.2d 341 (1992).

■ The criminal conduct alleged in the four cases pending against Fahm in Massachusetts and Rhode Island, as well as the federal charge pending in the District of Rhode Island, *see* 18 U.S.C. § 3146(a)(1) (failure to appear for sentencing), which were not reflected in the CHC calculation, constituted grounds which, by analogy, *see Aymelek,* 926 F.2d at 70 (using analogies for § 4A1.3(e) departures), plainly indicated that neither CHC II nor III adequately reflected the seriousness of Fahm's criminal conduct. *See* U.S.S.G. § 4A1.3(e) ("prior," "similar" criminal conduct not yet resulting in conviction appropriate for consideration in departure decision); *Diaz–Villafane,* 874 F.2d at 50 (pending charges not used in CHC calculation may be considered in departure decision); *United States v. Brown,* 899 F.2d 94, 98 (1st Cir.1990) (nature of conduct involved in pending charges, based on record documentation, supports § 4A1.3 departure). *But cf.* U.S.S.G. § 4A1.3, p.s. (prior arrest record *alone* not to be considered under § 4A1.3); *Rivera,* 994 F.2d at 949 (citing *Williams,* — U.S. at —, 112 S.Ct. at 1117).[4]

---

4. Although "mechanistic bean counting" is an inadequate guide to the reasonableness of departure rulings, *see United States v. Emery,* 991 F.2d 907, 913–14 (1st Cir.1993) (where "the sentencing court[ ] [has] articulated grounds for departing [which] permit us adequately to assess the reasonableness of the departure.... [n]o more is exigible."), we note that the reasonableness of the district court's decision to depart to CHC IV is strongly supported by the unadjudicated state and federal charges pending against Fahm, and by analogous criminal conduct not reflected in the original CHC calculation. There are two felony charges pending against Fahm in Massachusetts, dating from 1988, for larceny of an

automobile and obtaining property under false pretenses, *see* Mass.Gen.L. ch. 266 §§ 27A(a), 30, 34. Further, after Fahm defaulted on these two charges, a warrant issued; this default conduct is analogous to a federal charge of flight from prosecution, *see* 18 U.S.C. § 1073(1); *see also Aymelek,* 926 F.2d at 71 (federal law governs classification of criminal conduct for guideline sentencing purposes). Moreover, there is a felony charge outstanding against Fahm for violating Rhode Island banking laws in 1990, *see* R.I.Gen.L. § 19–19–2 (issuing fraudulent check), and another 1990 Rhode Island state charge for obstructing a police officer with the use of an alias, *see* R.I.Gen.L. § 11–32–1 (up to one year in

The grave signs of recidivism relied on by the district court likewise weighed heavily in favor of a substantial upward departure as well.[5] The pending Massachusetts false pretenses and larceny charges and the Rhode Island banking law charge involved alleged conduct similar to the instant credit card fraud offense, and Fahm's flight to avoid prosecution in this case is a carbon copy of his uncharged conduct of failing to answer to the Massachusetts charges following release pending prosecution. *See* U.S.S.G. § 4A1.3(e), p.s. The Rhode Island obstruction charge, based on Fahm's alleged use of an alias to mislead a police officer, occurred while he was awaiting sentencing on the instant offense as well, *see* U.S.S.G. § 4A1.3(d) (committing crime while awaiting sentencing is a factor to be weighed under § 4A1.3), as did the pending charge for failing to appear for sentencing in Rhode Island federal district court. These charges and the uncharged analogous conduct all involved criminal activity within two years of the offenses of conviction. *See* U.S.S.G. § 4A1.1(e) (two-point criminal history increase to reflect recency of offense); *Figaro*, 935 F.2d at 7 (treating recency of offense as evidence of recidivism) (§ 4A1.3 departure). The district court further found that Fahm had been treated leniently in the past, and had persisted—before and since the offenses of conviction—in the same pattern of credit fraud.

Given Fahm's significantly underrepresented criminal history and his serious recidivism, as evidenced by the recency of his criminal conduct and his commission of criminal offenses while released awaiting prosecution on other charges, the degree of the departure imposed by the district court was reasonable. *See generally United States v. Joan*, 883 F.2d 491, 496 (6th Cir.1989) (adopting *Diaz–Villafane* three-step analysis and assigning as factors in determining reasonableness of departure: the seriousness of the past conduct, recidivism risk, conduct not resulting in convictions, previous lenient treatment, and deterrent effect) (combined § 4A1.3 and § 5K2.0 departure).

**B. *Reconsideration of Original Sentence.***

At the September 30 sentencing, after overruling Fahm's objection to the § 4A1.3 departure ruling and denying his request to stay "imposition" of sentence, the court immediately proceeded to impose the twenty-month prison sentence but nonetheless allowed defense counsel two weeks within which to submit written opposition to the departure ruling. At the second sentencing hearing, on December 22, the district court declined to reconsider its § 4A1.3 departure ruling, then indicated that it intended to correct an earlier oversight by increasing Fahm's ABOL by two levels for unlawful flight from prosecution. Defense counsel objected that the court lacked jurisdiction to

prison), *see also Moore*, 931 F.2d at 5 n. 3 (minor convictions, in aggregate, can show pattern of conduct supporting finding of recidivism).

Yet pending as well is a federal felony charge for failure to appear at the sentencing hearing originally scheduled for January, 1991. *See* 18 U.S.C. § 3146(a)(1). Finally, the CHC calculation in the PSR did not reflect that Fahm committed the offenses of conviction after having defaulted (*i.e.*, failed to appear) on the Massachusetts charges, which would warrant two additional CH points. *See* U.S.S.G. § 4A1.1(d) (add two points if instant offense committed while on bail).

These pending state and federal charges, combined with the two-point § 4A1.1(d) increase and the analogous uncharged criminal conduct, would aggregate eight additional criminal points at a minimum. Ascribing even a single criminal history point to each pending state charge, and one to the pending federal charge, would result in five points. *See* U.S.S.G. § 4A1.1(a), (b), (c) (assigning, respec-

tively, three points for sentence above thirteen months, two points for sentences between three and thirteen months, and one point for under three months). Neither these pending charges, nor the analogous conduct (amounting to an additional one point), nor the two-point § 4A1.1(d) increase, were taken into account in the CHC calculation, which totalled three criminal history points. Thus, at its lowest range (8 points), the pending charges, analogous conduct, and the § 4A1.1(d) increase, combined with the three points originally assigned, would indicate a level V CHC. *See* U.S.S.G. pt. 5, Ch. A (sentencing table).

**5.** At the first hearing, the district court found:

You haven't spent much time in jail in spite of the number of brushes you've had with the law, and maybe that's the problem ... but at age [21] ... it's about time ... for you to accept responsibility for what you did and pay the penalty ... I'm going to make an upward departure in this case.

reconsider under Fed.R.Crim.P. 35 but made no explicit reference to the seven-day limitation period in Rule 35(c). *See* Fed.R.Crim.P. 35(c); *infra* at p. 453. The court then increased the original prison sentence to twenty-one months, bringing it within the revised 21–to–27 month GSR.

On appeal, Fahm claims that the district court lacked jurisdiction to increase the sentence originally imposed on September 30. *See* Fed.R.Crim.P. 35(c). The government, on the other hand, characterizes the December 22 hearing as a mere continuation of the first hearing, and accordingly contends that the seven-day limitation period in Rule 35(c) was not implicated. Alternatively, the government argues that the district court possessed inherent power to reconsider the original sentence notwithstanding the limitation period in Rule 35(c). We conclude that neither government theory is tenable.

### 1. *Fed.R.Crim.P. 35(c) (1991).*

■ The district court judgment and docket entry plainly reflect that the twenty-month prison sentence was "imposed" on September 30. *See United States v. Morillo,* 8 F.3d 864, 866 (1st Cir.1993) (noting likelihood that "imposition of sentence," within meaning of Rule 35(c), occurs on date judgment entered) (dictum) (*citing United States v. Zuleta–Molina,* 840 F.2d 157, 158 n. 1 (1st Cir.1988)); *United States v. Carr,* 932 F.2d 67, 69 (1st Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 112, 116 L.Ed.2d 82 (1991); *see also* Fed.R.Crim.P. 32(b)(1) ("The judgment shall be signed by the judge and entered by the clerk."). Moreover, the September 30 hearing transcript reflects that the court pronounced the original sentence *after overruling* Fahm's objection to the § 4A1.3 departure. Later in the hearing, defense counsel sought to stay *imposition* of sentence pending submission of opposition to the § 4A1.3 departure. Although the court categorically denied a stay—leaving its twenty-month sentence in place—it allowed defense counsel time to submit written opposition. The district court record thus belies any interpretation that

sentence was not imposed on September 30. Consequently, we must decide whether the original sentence was subject to reconsideration by the district court on December 22, well beyond the time allowed under Rule 35(c).

Rule 35(c) states:

**(c) Correction of Sentence by Sentencing Court.** The court, *acting* within 7 days after the *imposition* of sentence, may correct a sentence that was imposed as a result of arithmetical, technical, or other clear error.

(Emphasis added.) The advisory committee note explains that new Rule 35(c) recognizes the power of a sentencing court to correct certain types of sentencing errors "discovered shortly after the sentence is imposed." Fed.R.Crim.P. 35(c) advisory committee's note (1991 amendment). *Compare Carr,* 932 F.2d at 71 n. 5 (pre-Rule 35(c) case). The relevant case law likewise compels the conclusion that the district court lacked jurisdiction to correct its original sentence beyond the limitation period prescribed in Rule 35(c). *Morillo,* 8 F.3d at 869 ("[Rule 35(c)'s] interval constitutes a limitation ... and the limitation is absolute") (dictum); *United States v. Turner,* 998 F.2d 534, 536 (7th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 639, 126 L.Ed.2d 598 (1993).

### 2. *Inherent Power.*

■ The government alternatively contends, Rule 35(c) notwithstanding, that the district court possessed the inherent power to reconsider Fahm's ABOL to correct an obvious oversight. The government relies on *United States v. Rico,* 902 F.2d 1065 (2d Cir.), *cert. denied,* 498 U.S. 943, 111 S.Ct. 352, 112 L.Ed.2d 316 (1990), and *United States v. Cook,* 890 F.2d 672 (4th Cir.1989).[6] Upon careful consideration of the rule, the advisory committee's note, and relevant case law, we conclude that the court had no inherent power to increase its original sentence.

The 1991 amendment to Rule 35(c) was intended to codify the result reached in *Rico* and *Cook* but requires as well that the sen-

---

**6.** *See also Carr,* 932 F.2d at 71 (pre-Rule 35(c) case recognizing limited "inherent power" to reconsider sentence during appeal period).

tencing court *act within* the time frame prescribed in the rule, *see Morillo,* 8 F.3d at 869 n. 8, so as to: (i) "reduce the likelihood of jurisdictional questions in the event of an appeal" from the original judgment; (ii) "provide the parties ... an opportunity to address [on appeal] the court's correction of the sentence, or lack thereof"; and (iii) "reduce the likelihood of abuse of the rule by limiting its application to acknowledged and obvious errors in sentencing," Fed.R.Crim.P. 35(c) advisory committee's note (1991 amendment).[7] *See United States v. Ross,* 9 F.3d 1182, 1188–89 (7th Cir.1993); *United States v. Daddino,* 5 F.3d 262, 265 (7th Cir.1993) (per curiam) (exclusive authority for correction of obvious *judicial* errors and omissions derives from Rule 35(c)).[8]

Since the narrow window of opportunity allowed under Rule 35(c) closed long before the district court reconsidered its original sentence, and the court lacked inherent power to do so, the original sentence must be reinstated. *See Turner,* 998 F.2d at 536 ("The district court's inaction had the same effect as denying the motion, making the judgment final on the date the district judge's power to alter the sentence expired.").

*The twenty-one month prison sentence imposed on December 22, 1992, is to be vacated; the original twenty-month prison sentence imposed on September 30, 1992, is to be reinstated. So ordered.*

---

**7.** Therefore, for example, even though Fahm's oral request for reconsideration of the § 4A1.3 departure ruling on September 30 was made within the limitation period, the court would have been required to *act* on the request within the seven-day period (properly calculated) following entry of the judgment of conviction on October 2, 1992. *See Morillo,* 8 F.3d at 869. Accordingly, on December 22 the district court was without jurisdiction under Rule 35(c) to "correct," in any way, its original sentence. *See*

*also* Fed.R.Crim.P. 45(a), (b) (rules governing computation and enlargement of time).

**8.** There is no suggestion, either by the parties or in the appellate record, that the twenty-one month sentence was imposed pursuant to Fed. R.Crim.P. 36. In any event, Rule 36 is considered generally inapplicable to *judicial* errors and omissions. *Daddino,* 5 F.3d at 264–65. *See generally* 3 Charles A. Wright, *Federal Practice and Procedure* § 611 (2d ed. Supp.1993).